**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JOSEPH EDWARD PARKER**                                                  **PLAINTIFF**

**V.**                                                  **CIVIL ACTION NO. 2:14cv9-KS-MTP**

**LEAF RIVER CELLULOSE, LLC**                                     **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on the Defendant Leaf River Cellulose, LLC's
Motion to Dismiss [7].  Having considered the submissions of the parties and the
applicable law, the Court finds that the motion is well taken and should be granted.

<u>**I.  BACKGROUND**</u>

On January 23, 2014, Plaintiff Joseph Edward Parker filed suit against Leaf River
Cellulose, LLC ("Leaf River"), his former employer, alleging that he was wrongfully
discharged in violation of Mississippi law.  (*See* Compl. [1].)  The Complaint asserts that
the Court has subject matter jurisdiction over this cause pursuant to Title 28 U.S.C. §
1332 (diversity of citizenship).  Parker seeks, *inter alia*, attorney's fees, punitive
damages, and a judgment in excess of $75,000.00 in relief.  The Court is satisfied that
the requirements of diversity jurisdiction are met in this case.

The following allegations of the Complaint are pertinent to the subject motion.
Leaf River hired Parker in or around October of 2008 to work at its plant in New
Augusta, Mississippi.  On December 12, 2013, Leaf River received a report that Parker
had a handgun in his vehicle that was located in an employee parking lot.  Leaf River
requested and was granted permission to search Parker's vehicle.  Leaf River found a
handgun in Parker's vehicle.  Immediately following the search of Parker' vehicle, Leaf

River "suspended Parker's employment and directed him to leave the premises." (Compl. [1] at ¶ 12.)  On December 13, 2013, Leaf River terminated Parker's employment.  Leaf River's termination of Parker violated section 45-9-55 of the Mississippi Code (employee parking lots; employer liability).

Presently before the Court is Leaf River's Motion to Dismiss [7].  Leaf River seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and argues that this lawsuit is barred by subsection (5) of section 45-9-55.  The motion has been fully briefed and the Court is ready to rule.

## II.  DISCUSSION

### A.    Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).  A complaint containing mere "labels and conclusions, or a formulaic recitation of the elements" is insufficient.  *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted).  Although courts are to accept all well-pleaded facts as true and view those facts in the

light most favorable to the nonmoving party, courts are not required "to accept as true a legal conclusion couched as factual allegation." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted).  "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)); *see also* 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1357 (3d ed.) (providing that dismissal is proper when the allegations of the complaint are "essentially self-defeating" due to the existence of "a built-in defense").  A court may consider matters of public record in deciding a Rule 12(b)(6) motion.  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted).

### B.   Analysis

Both Parker's claim and Leaf River's defense hinge on the terms of section 45-9-55.  The statute provides as follows:

> (1) Except as otherwise provided in subsection (2) of this section, a public or private employer may not establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area.

> (2) A private employer may prohibit an employee from transporting or storing a firearm in a vehicle in a parking lot, parking garage, or other parking area the employer provides for employees to which access is restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property.

> (3) This section shall not apply to vehicles owned or leased by an employer and used by the employee in the course of his business.

(4) This section does not authorize a person to transport or store a firearm on any premises where the possession of a firearm is prohibited by state or federal law.

(5) A public or private employer shall not be liable in a civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section.

Miss. Code Ann. § 45-9-55.  The Court has identified only one case referencing this statute.  *See Swindol v. Aurora Flight Scis. Corp.*, No. 1:13cv237, 2014 WL 4914089 (N.D. Miss. Sept. 30, 2014).  In *Swindol*, the plaintiff alleged that the defendant wrongfully terminated his employment after a firearm was found in his vehicle on company property.  2014 WL 4914089, at *1.  The plaintiff relied upon article 3, section 12 of the Mississippi Constitution[1] and section 45-9-55 in arguing that the district court should recognize an exception to Mississippi's well-established employment-at-will doctrine when an employee is terminated for having a firearm in a locked vehicle on his employer's property.  *Id.* at *3.  Judge Aycock rejected this argument.  "[I]n the face of Mississippi's longstanding reluctance to expand its existing public policy exceptions, the Court cannot say that the Mississippi Supreme Court would recognize a third exception to the doctrine of at-will employment as proposed here."  *Id.* at *4.  Judge Aycock also noted that section 45-9-55 "does not provide for a private right of action . . . ."  *Id.* at *4 n.3.  Section 45-9-55's immunity provision, subsection (5), was not specifically discussed in *Swindol.*

---

[1] "The right of every citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power when thereto legally summoned, shall not be called in question, but the Legislature may regulate or forbid carrying concealed weapons." Miss. Const. art. III, § 12.

-4-

The Court must apply Mississippi's rules of statutory construction in considering the effect of section 45-9-55 to this action.  *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 387 (5th Cir. 2013) (applying Louisiana's rules); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 183 (5th Cir. 2000) (approaching the construction of a Texas statute "as a Texas court would") (citation omitted).  The Mississippi Supreme Court has issued the following guidance for a court examining statutory law:

> This Court does not "decide what a statute should provide, but [ ] determine[s] what it does provide." *Lawson v. Honeywell Intern., Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011).  "The Court's goal is to give effect to the intent of the Legislature." *Id.*  To determine that intent, this Court looks first to the language of the statute. *Id.*  "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Id.*  Furthermore, words and phrases contained in a statute are to be given their common and ordinary meaning. *Id.* at 1028.

*Palermo v. LifeLink Found., Inc.*, No. 2012-CT-01228-SCT, 2014 WL 6480524, at *6 (¶ 13) (Miss. Nov. 20, 2014).  The Mississippi Supreme Court often looks to standard and legal dictionaries in determining the common or popular meaning of statutory terms. *See Lawson*, 75 So. 3d at 1028 (¶ 9) (citing cases).  In construing a state statute in the absence of explicit state-court guidance, a district court is "to predict state law, not to create or modify it." *Truong*, 717 F.3d at 381 (quoting *Coe v. Chesapeake Exploration, L.L.C.*, 695 F.3d 311, 316 (5th Cir. 2012)).

Parker's Complaint against Leaf River clearly falls under the purview of section 45-9-55(5).  Parker seeks damages exceeding $75,000.00 from Leaf River, a limited liability company, based on its termination of his employment.  (*See* Compl. [1] at pp. 1, 2, 5.)  Thus, this is "a civil action for damages" against a "private employer".  Miss. Code Ann. § 45-9-55(5).  Parker claims that he was terminated the day after Leaf River found

a handgun in his vehicle in an employee parking area and that this termination violated § 45-9-55.  (*See* Compl. [1] at ¶ 10, 14-23.)  Consequently, this is also an action "arising out of an occurrence involving the transportation, storage, [or] possession . . . of a firearm covered by this section."  Miss. Code Ann. § 45-9-55(5).  The Court notes that the terms "arising out of" and "occurrence" are not defined under section 45-9-55.  However, the plain and ordinary meanings of these terms are sufficiently expansive to operate in the confines of this dispute.  In considering a separate statutory provision, the Mississippi Supreme Court has described the terms "arising out of" as "broadly-construed words of causation" simply calling "for some causal connection" or "rational connection".  *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888, 890-91 (Miss. 1980) (construing Miss. Code Ann. § 71-3-3(b)).  An "occurrence" is "something that takes place".  *Merriam-Webster Dictionary* 501 (2004); *see also Black's Law Dictionary* (9th ed. 2009) (defining "occurrence" as "[s]omething that happens or takes place").  The Complaint evinces a rational connection between Parker's lawsuit and something taking place involving a handgun being stored in Parker's vehicle since this "occurrence" is a central factual predicate for the claim of wrongful discharge before the Court.  (*See* Compl. [1] at ¶¶ 8-12.)  Accordingly, the plain statutory text of section 45-9-55(5) bars this action for damages against Leaf River.

Parker's textual argument against dismissal is unconvincing.  Parker contends that section 45-9-55(5) is inapplicable "because the 'occurrence' giving rise to Parker's damages was his wrongful termination in violation of Miss. Code Ann. § 45-9-55(1) and nothing 'resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section.'"  (Pl.'s Mem. Brief in

Opp. to Mot. to Dismiss [11] at p. 1.)  This is nonsense.  There could be no violation of section 45-9-55(1) in the absence of Leaf River "prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot . . . ."  Miss. Code Ann. § 45-9-55(1).  Thus, Parker's statutory claim necessarily implicates "the transportation, storage, possession or use of a firearm covered by this section" language of section 45-9-55(5). Furthermore, Parker's Complaint gives rise to a plausible connection between Leaf River confirming the presence of "a handgun in his personal vehicle located in an employee parking area" on December 12, 2013,[2] i.e., "an occurrence involving the transportation, storage, [or] possession . . . of a firearm",[3] and Leaf River's termination of "Parker's employment [on December 13, 2013,] in violation of its own policies and in violation of Mississippi law."  (Compl. [1] at ¶ 14.)  Parker's argument in opposition to dismissal fails to erase this causal connection from the pleadings.

Parker further suggests that section 45-9-55(5) only immunizes employers from lawsuits arising out of workplace violence involving the use of a firearm.  The statute "was proposed, passed, and signed with a universal understanding that sub-section (5) . . . shielded employers from tort lawsuits related to workplace shootings."  (Pl.'s Mem. Brief in Opp. to Mot. to Dismiss [11] at pp. 5-6.)  That the Mississippi Legislature intended to immunize employers from lawsuits arising out of shootings in the workplace does not mean that it also intended for employers to be subjected to civil actions by individuals terminated for merely bringing a firearm to the workplace.  "Whatever the

---

[2] (Compl. [1] at ¶¶ 8-10.)

[3] Miss. Code Ann. § 45-9-55(5).

Legislature says in the text of the statute is considered the best evidence of the legislative intent." *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 155 (¶ 14) (Miss. 2006) (citation omitted).  The statutory provision before the Court bars civil actions arising out of incidents "involving the *transportation, storage, possession or* use of a firearm".  Miss. Code Ann. § 45-9-55(5) (emphasis added).  The Court is prohibited from deleting these emphasized terms from the statute under the guise of statutory construction.  "The courts have no right to add anything to or take anything from a statute, where the language is plain and unambiguous.  To do so would be intrenching upon the power of the Legislature." *Lott v. Alexander*, 134 So. 3d 369, 373 (¶ 12) (Miss. Ct. App. 2014) (quoting *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1208 (¶ 17) (Miss. 2002)).  Parker's suggested restrictive reading of section 45-9-55(5) is not well taken.

Parker also argues that the "authors [of section 45-9-55 would be] accused of madness" if subsection (5) is found to immunize employers engaged in conduct proscribed by subsection (1).  (Pl.'s Mem. Brief in Opp. to Mot. to Dismiss [11] at p. 6.) Here, Parker reads subsection (5) too broadly.  As noted by Leaf River, this provision "says nothing about private injunctive relief, declaratory relief, enforcement actions by state agencies, or any other potential remedy."  (Def.'s Reply Mem. in Supp. of Mot. to Dismiss [14] at p. 5.)  Leaf River further persuasively asserts:  "Parker wants the one thing the Mississippi statute says he cannot have:  civil damages.  Precluding this particular remedy is not 'madness.'  It is, rather, an expressly-stated policy decision with which he disagrees."  (Def.'s Reply Mem. in Supp. of Mot. to Dismiss [14] at p. 5.)

Finally, Parker posits that to "the extent Mississippi law does not presently

recognize a private right of action for violation of § 45-9-55(1) this Court should do so today in order to vindicate the public policy at issue and to promote compliance with the law." (Pl.'s Mem. Brief in Opp. to Mot. to Dismiss [11] at p. 2.)  Mississippi adheres to the employment-at-will doctrine.  *See Senseney v. Miss. Power Co.*, 914 So. 2d 1225, 1228 (¶ 8) (Miss. Ct. App. 2005) (citing *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 874 (Miss. 1981)).  Where there is no written employment agreement (or where an agreement does not specify the length of employment), the employment relationship is terminable at the will of either party.  *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987).  This "means that an employer may terminate an employee at any time for a good reason, a wrong reason, or no reason at all."  *Senseney*, 914 So. 2d at 1228 (¶ 8) (citation omitted).  There are two judicially-created exceptions to the employment-at-will doctrine recognized under Mississippi law.  *See McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 606-07 (Miss. 1993) (encompassing an employee reporting or refusing to participate in criminal activity); *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356, 361 (Miss. 1992) (finding that an employment manual can give rise to contractual rights).  The Court declines Parker's request for it to create a third exception when an individual is terminated for bringing a firearm on the premises of his or her employer.

In a diversity action such as this, the Court's task is to apply Mississippi law and not to create or adopt innovative theories of recovery.  *See Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 411 (5th Cir. 2007) ("We have long followed the principle that we will not create innovative theories of recovery or defense under local law, but will rather merely apply it as it currently stands.") (citation omitted); *Janus v.*

*BellSouth Telecomms., Inc.*, 48 F.3d 532, 1995 WL 84545, at *2 (5th Cir. 1995) (rejecting the plaintiffs' negligence claim that depended upon a legal duty not yet recognized by Mississippi's highest court).  Recognizing another exception to Mississippi's employment-at-will doctrine would not only create law, it would contradict an existing state statute barring this "civil action for damages".  Miss. Code Ann. § 45-9-55(5).  Parker cites no authority countenancing such a result.  Further, the Mississippi Supreme Court has provided ample justification for judicial restraint in the face of a controlling statute:

> The court cannot create a law. Its sole power is to enforce the statute as written by the legislature. . . .  In order to preserve the separation of powers set forth in Article 1, Section 1 of the Mississippi Constitution of 1890, it is essential that the judicial department give effect to the acts of the legislative department as long as those acts are expressed in constitutional terms.  In modern times the trend to turn to the judicial department for a solution to all of the real or imagined ills of our society has increased sometime to the point of requesting the courts to usurp the legislative power of the legislative department.  This, we must resist by the exercise of judicial self restraint and limit our role to the judicial power granted the judicial department under our Constitution.

*Kelly*, 397 So. 2d at 877 (internal citation omitted) (holding that it was for the Mississippi Legislature to create a cause of action for wrongful discharge based on an employee filing a workers' compensation claim).  Even in the absence of section 45-9-55(5)'s immunity bar, the Court would reject Parker's request for the recognition of a new exception to Mississippi's longstanding doctrine of employment-at-will.  "Mississippi courts have steadfastly refused . . . [for] more than twenty years . . . to expand the exceptions carved out by *McArn* or to recognize any additional public policy exceptions."  *Swindol*, 2014 WL 4914089, at *3 (citing opinions from the Fifth Circuit, the Northern and Southern Districts of Mississippi, the Mississippi Supreme Court, and the

Mississippi Court of Appeals).  In congruence with Judge Aycock's opinion in *Swindol*, this Court also opts not to create a new public policy exception to Mississippi's doctrine of at-will employment based on section 45-9-55(1).

### III.  CONCLUSION

This lawsuit is barred by section 45-9-55(5) of the Mississippi Code.  Any amendment of the Plaintiff's claim for wrongful termination would be futile given this statutory bar and Mississippi's longstanding adherence to the employment-at-will doctrine.  *Cf. In re Enron Corp. Sec.*, 535 F.3d 325, 333-34, 342 (5th Cir. 2008) (affirming the dismissal with prejudice of claims where the district court denied motions for leave to amend as futile).

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss [7] is granted and the Plaintiff's Complaint is dismissed with prejudice.  A separate judgment will issue in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 19th day of December, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE